UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES & TECHNICIANS – COMMUNICATIONS WORKERS OF AMERICA LOCAL 41,<br><br>Plaintiff,<br><br>v.<br><br>ABC, INC.,<br><br>Defendant. | No. 09 C 3854<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

This dispute arises out of an alleged violation of a grievance settlement between Plaintiff National Association of Broadcast Employees & Technicians - Communications Workers of America Local 41 and Defendant ABC, Inc. ("ABC").[1] Plaintiff's complaint alleges breach of contract and asks this Court first to enforce the terms of a 2008 settlement agreement between Local 41 and ABC and second to order ABC to provide all training afforded to other station employees at WLS-TV in Chicago to the Technical Directors prior to permanent work offers being made to employees. Defendant filed a motion to dismiss Plaintiff's complaint alleging that this Court does not have jurisdiction to adjudicate this dispute pursuant to § 301 of the Labor Management Relations Act ("LMRA") of 1947 (29 U.S.C. § 185 (c)). Defendant argues that Plaintiff's exclusive remedy is under the grievance and arbitration procedure contained within

---

[1] The parties use the terms "NABET-CWA," "NABET," and "Local 41" interchangeably. Here, I will use "Local 41" to signify the local branch of the National Association of Broadcast Employees and Technicians - Communications Workers of America, the named plaintiff in this case. I will use "NABET-CWA" to refer to the national office of the same.

the collective bargaining agreement ("Master Agreement") binding these two parties. I converted Defendant's motion to dismiss into a motion for summary judgment and relaxed Local Rule 56.1(b)(3) requiring the party opposing a summary judgment motion to submit a concise response to the movant's statement of material facts, inasmuch as there is no dispute over material facts.

## II. FACTUAL BACKGROUND

On September 16, 2008, Local 41 filed grievance AC08-02 against ABC for violations of Sideletter FX of the Master Agreement. This grievance stemmed from ABC's alleged failure to include Local 41 represented Technical Directors in training on "Parkervision" - type equipment. On December 11 of the same year, a settlement was reached between ABC and Local 41 wherein ABC agreed that its training obligations set forth in Sideletter FX would not apply to any Production Technical Director who elected to receive a $2000 payment in lieu of the training ("Settlement Agreement").[2] In this settlement agreement, NABET-CWA withdrew grievance AC08-02 with prejudice. The signed statement memorializing the agreement asserted, inter alia, that the agreement was made on a "no-precedent, non-citable basis" and was not to be referenced "in any arbitration or other legal proceeding" except "*as necessary to enforce its terms*." (*emphasis added*).

---

[2] Contrary to the plain language of the Settlement Agreement, Plaintiff implies that in the Settlement Agreement, ABC promised to offer Technical Directors the option of being trained in "Parkervision"-type equipment or an elective payment of $2000. ABC did not in fact install "Parkervision" equipment, but instead installed "Ignite," a similar system which automates control room functions.

On March 13, 2009, Local 41 filed a second grievance, AC09-02, claiming that since February 2009, ABC had been violating "Section 2.1, Sideletter FX and other pertinent provisions of the 2007-2011 NABET-CWA/ABC, Inc. Master Agreement." On May 4, 2009, ABC responded to Local 41's grievance AC09-02, asserting that Local 41 should have filed its grievance under Sideletter DK which is implemented by Sideletter DV, rather than under Sideletter FX. The arbitration process is decidedly different for Sideletters FX and DV. According to Sideletter DV, paragraph 8, a grievance must first be submitted to a Special Committee. Only if that committee fails to settle the dispute can the grievance then be submitted to a national impartial arbitrator. Because ABC found that Plaintiff had not utilized the proper dispute resolution process, Defendant asserted that they were not obligated to respond to grievance AC09-02. Conversely, the process utilized by Plaintiff in accordance with Sideletter FX provides for resolution locally, rather than by Special Committee and a national impartial arbitrator.

On May 8, Local 41 wrote a letter to the local impartial arbitrator requesting arbitration of grievance AC09-02. ABC's May 18 response reiterated its contention that disputes over computer systems and training fall under Sideletter DK and must therefore be arbitrated according to Sideletter DV.[3] On May 21, Local 41 restated its arbitration request and noted that its prior September 2008 grievance was filed pursuant to Sideletter FX. On May 28, Plaintiff sent yet another letter to the arbitrator, articulating Local 41's position that ABC should bring up any procedural issues during the local arbitration process. Two days later, ABC communicated

---

[3] ABC also noted in this letter that Umpire McAlpin was not one of the contractually agreed upon Impartial Umpires for this type of grievance.

3

to the local arbitrator that (1) the grievance involves a computer system covered by Sideletter DK and is therefore governed by the terms of Sideletter DV; (2) Local 41's citation to the September 2008 grievance violated the terms of the settlement of that grievance; (3) ABC has in the past refused to process a grievance regarding computer equipment under local arbitration rather than Sideletter DV; and (4) that ABC filed a grievance that day with the National Sector President of NABET-CWA regarding Local 41's submission of their grievance locally in violation of Sideletter DV of the Master Agreement.

After a final request from Local 41 on June 1 to begin processing the arbitration and allow ABC to address its procedural issues during the arbitration, on June 2 the local arbitrator held that because ABC had raised "substantive arbitrability issues" he did not have the "authority to rule in this area" nor did he have the "authority to compel arbitration before him. . ." In response, Local 41 stated on June 4 that if the local arbitrator did not change his mind, it would go through with a prior threat to sue ABC for breach of contract under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The local arbitrator reaffirmed his resolution not to arbitrate.

Given the dispute regarding the proper procedure for the resolution of Plaintiff"s grievance AC09-02, ABC filed grievance AIO 09-1 intending to identify the correct procedure for resolving grievance AC09-02. On June 8, 2009, the NABET-CWA president responded to the grievance filed by ABC regarding the dispute over which arbitration procedure to follow. In his response, NABET President John Clark denied that ABC's grievance had been properly filed, as it was filed against the Sector instead of Local 41. Additionally, Clark asserted that this grievance should have been referred to a Sideletter DV special committee - the same issue that

ABC took with Local 41's grievance. The last, and most recent exhibit submitted by either party in this case, is a June 23 letter sent by Sean Quinn, ABC's Vice President of Labor Relations, to NABET-CWA's Vice President, restating a request purportedly made on June 8 by ABC to put together a Sideletter DK Special Committee for June 25, and indicating that NABET-CWA's VP had failed to respond to prior requests in this matter.

**III. STANDARD OF REVIEW**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has set forth the basis for summary judgment, the burden shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmovant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## IV. DISCUSSION

Defendant asserts that this Court lacks jurisdiction to adjudicate this dispute because Plaintiff is bound by the Master Agreement which sets forth a grievance and arbitration procedure for resolving disputes between parties. Defendant argues that a dispute regarding the Settlement Agreement "is subject to the Master Agreement's grievance and arbitration procedure because the dispute raises rights and obligations under the Master Agreement." Defendant notes that the applicability of the Master Agreement's grievance and arbitration procedure to the Complaint should be viewed as particularly compelling because the Settlement Agreement in relevant part amends the Master Agreement's obligation to provide training to certain employees. The essence of Defendant's argument is that by alleging a violation of the Settlement Agreement, Plaintiff alleges a violation of the Master Agreement, thereby invoking the grievance and arbitration provision set forth therein.

Plaintiff asserts that the Settlement Agreement is in fact a contract within the meaning of Section 301 and therefore subject to the jurisdiction of this Court. Additionally, Plaintiff refers to the dispute surrounding the proper procedure for arbitrating grievance AC09-02. Grievance AC09-02 asserts that Defendant violated various provisions of the Master Agreement including Sideletter FX. Plaintiff implies that the violations asserted in grievance AC09-02 were a continuation of the violations asserted in grievance AC08-02, and that this alleged behavior is a breach of the Settlement Agreement.[4] Although Plaintiff does not specifically allege a violation

---

[4] Grievance AC09-02 states : "The Union grieves that the Company is in violation of Section 2.1, Sideletter FX and other pertinent provisions of the 2007-2011 NABET-CWA/ABC, Inc. Master Agreement." Although Plaintiff does not specifically allege a violation of the settlement agreement in this second grievance, Plaintiff implies in its Response that the Second Grievance was filed in response to Defendant's acts which it considered to violate not only the

of the Settlement Agreement in grievance AC09-02, Plaintiff implies in its Response that grievance AC09-02 was filed in response to Defendant's acts which it considered to violate not only the Master Agreement's Sideletter FX, but also the Settlement Agreement. Plaintiff implies that Defendant's alleged refusal to arbitrate grievance AC09-02 was a refusal to arbitrate the claim that Defendants breached the settlement agreement.[5] Indeed, the alleged conduct behind grievance AC08-02, grievance AC09-02, and Defendant's alleged breach of the Settlement Agreement is the same: Defendant's alleged failure to provide training to Technical Directors in accordance with Sideletter FX of the Master Agreement. Accordingly, Plaintiff argues that Defendant has engaged in behavior that constitutes a refusal to arbitrate, that it is estopped from claiming that Plaintiff has failed to exhaust its contractual remedies, and that this Court has jurisdiction over Plaintiff's suit to enforce the Settlement Agreement.[6]

Plaintiff is correct that in accordance with Section 301 "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act [the LMRA], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C.

---

Master Agreement Sideletter FX, but also violate the prior settlement agreement.

[5] Plaintiff asserts that it filed its second grievance after Defendant breached the settlement agreement and that Defendant has "adamantly refused to arbitrate" the grievance.

[6] Plaintiff argues that Defendant's arguments regarding this Court's jurisdiction are misplaced. Plaintiff asserts that Defendant's claim that the Union's exclusive remedy lies in the grievance and arbitration procedures set forth in the Master Agreement is in essence an assertion that Plaintiff has failed to exhaust contractual remedies. Plaintiff adds that failure to exhaust contractual remedies is in fact a Rule 12(b)(6) defense and not "an impediment to a court's jurisdiction under § 301." Acknowledging this argument, Plaintiffs are not relieved of their obligation to exhaust all grievance and arbitration procedures set forth in the collective bargaining agreement as will be discussed infra. Therefore, this argument does not alter my standard of review or analysis.

§ 185. Here, the dispute at bar is between an employer (Defendant) and an appropriate labor organization (Plaintiff) and pertains to the violation of a contract between the two parties. Therefore, this Court is granted jurisdiction in accordance with Section 301. However, Federal law governing Section 301 mandates that prior to resorting to the courts, an employee must exhaust the grievance and arbitration procedures set forth in the collective bargaining agreement. *Duerr v. Minnesota Min. and Mfg. Co.*, 101 F.Supp.2d 1057, 1061 (N.D.Ill. 2000) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967); *McCarthy v. Sunset Food Mart, Inc.*, 1994 WL 692606, at* 4 (N.D.Ill., Dec. 1, 1994).

Despite this requirement, courts have recognized various exceptions which excuse a Plaintiff's failure to exhaust. *McCoy v. Maytag Corp.*, 495 F.3d 515, 524 (7th Cir. 2007); *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914); *Roman v. U.S. Postal Service*, 821 F.2d 382, 388 (7th Cir.1987). One exception to the exhaustion requirement occurs when an employer's conduct "amounts to a repudiation of the contractual remedies so that the employer 'is estopped by his own conduct to rely upon unexhausted grievance and arbitration procedures as a defense to the employee's cause of action. . .'" *Roman v. U.S. Postal Service*, 821 F.2d 382, 388 (7th Cir. 1987) (citing *Vaca*, 386 U.S. at 185, 87 S.Ct. at 914). Plaintiff argues that Defendant refused to arbitrate grievance AC09-02 and that its conduct thus constitutes a repudiation of the grievance and arbitration procedure set forth in the Master Agreement. Plaintiff asserts that it should therefore be excused from the exhaustion requirement. Defendant adamantly disputes the contention that it repudiated the Master Agreement and asserts that Plaintiff has not exhausted the grievance and arbitration procedure set forth in the Master Agreement.

As a general matter, courts favor arbitration and should require it "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 ( 7th Cir. 1987). It is undisputed that the Settlement Agreement is a contract under Section 301 and neither party disputes that disagreements surrounding the enforcement of a settlement agreement should be governed by the Master Agreement.[7] Likewise, neither party disputes that grievanceAC09-02 falls within the purview of the Master Agreement's grievance and arbitration procedures. Instead, the parties dispute whether or not Defendant repudiated the grievance procedure by refusing to arbitrate grievance AC09-02, and implicitly, Plaintiff's alleged breach of settlement claim.

The Seventh Circuit has noted that "[w]hen one party to an agreement proclaims that it no longer considers the obligation to arbitrate binding, then a request for arbitration is futile; the other party need not waste time but may proceed straight to court. The 'repudiation' doctrine is one of many dealing with anticipatory breach of contract. Yet there must be an anticipatory rejection of the arbitration clause; a failure to implement the (other side's version of the) substantive provisions of the agreement is not enough." *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 692 (7th Cir.1987) (*See Drake Bakeries, Inc. v. Bakery & Confectionery Workers*, 370 U.S. 254, 260-62, 82 S.Ct. 1346, 1350-51, 8 L.Ed.2d 474 (1962); *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1488 (7th Cir.1985)). As further discussed in *Sidhu v. Flecto Co.*, an aggrieved employee will be relieved of its requirement to exhaust administrative remedies as to that

---

[7] Plaintiff notes that the settlement contract is a contract within the meaning of Section 301, however Plaintiff does not allege that disputes arising out of settlement agreements are not subject to the grievance and arbitration procedures set forth in the Master Agreement.

9

grievance if the "employer repudiates the procedures established" in the collective bargaining agreement governing that particular grievance. 279 F.3d 896, 898 (9th Cir. 2002). "[O]nly where there is a refusal to arbitrate all grievances, or where the refusal to arbitrate a particular class of grievances amounts to a wholesale repudiation of the contract, will an employer be estopped from raising unexhausted grievance procedures as a defense." *Velan Valve Corp.,* 316 N.L.R.B. 1273, 1274 (1995).

First, Plaintiff asserts that Defendant refused to arbitrate its dispute surrounding the enforcement of the Settlement Agreement. Although the alleged conduct responsible for the breach of the Settlement Agreement is essentially the same conduct alleged in grievance AC09-02, Plaintiff does not 'grieve' a violation of the Settlement Agreement in grievance AC09-02.[8] In fact, Plaintiff presents the Court with no evidence to suggest that they specifically attempted to arbitrate the breach of the Settlement Agreement. Neither party disputes that disagreements arising out of the settlement agreement are subject to the grievance and arbitration procedures set forth in the Master Agreement, and neither party has submitted evidence to indicate that the grievance and arbitration procedure has been followed pursuant to the Master Agreement. I therefore find that with respect to breach of Settlement Agreement, Defendant has not refused to arbitrate, Plaintiff has not exhausted its remedies under the collective bargaining agreement, and thus this dispute must be resolved pursuant to the terms set forth in the Master Agreement.

Secondarily, Plaintiff alleges that Defendant has repudiated the grievance and arbitration procedure set forth in the Master Agreement as to grievance AC09-02. This grievance was filed

---

[8] As noted previously, Plaintiff's Grievance AC09-02, claimed that since February 2009, ABC had been violating "Section 2.1, Sideletter FX and other pertinent provisions of the 2007-2011 NABET-CWA/ABC, Inc. Master Agreement."

10

in response to Defendant's alleged breach of the Settlement Agreement and alleged that Defendant violated Sideletter FX of the Master Agreement by failing to provide training to Technical Directors. Plaintiff asserts that Defendant has "refused to arbitrate, plain and simple." Plaintiff fails to qualify this assertion however. Defendant has not simply refused to arbitrate the dispute at hand, but instead has challenged the arbitration procedure set forth by Plaintiff. While Plaintiff argues that grievance AC09-02 should be filed as a violation of Sideletter FX, Defendant asserts that grievance AC09-02 should be resolved under Sideletter DV, paragraph 8. Defendant asserts that there is a "genuine issue as to which grievance and arbitration procedure in the Master Agreement applies to the Union's grievance. . ." In furtherance of this assertion, Defendant states that on May 29, 2009 it filed a grievance which "directly raises the issue of which grievance and arbitration procedure governs the Union's grievance. . ."

The motion at hand does not require that I determine the proper Sideletter to control the resolution of grievance AC09-02. Instead, I must decide whether or not Defendant has refused to arbitrate thereby relieving Plaintiff of its exhaustion requirement. I find that Defendant has not refused to arbitrate. Defendant has repeatedly asserted that Plaintiff's dispute should be resolved in accordance with Sideletter DV. Acknowledging the ongoing dispute surrounding the correct resolution process, Defendant has worked within the grievance and arbitration framework set forth in the Master Agreement to resolve the matter. Defendant has not refused to arbitrate, but rather refused to arbitrate grievance AC09-02 in the manner Plaintiff sees fit. Because Defendant has pursued appropriate channels in accordance with the Master Agreement to resolve the dispute over the proper method of resolution of grievance AC09-02, I do not find that Defendant has refused to arbitrate. Plaintiff is therefore not excused from the exhaustion requirement.

I acknowledge that as of June 8, 2009 there was a dispute regarding the proper procedure for resolving grievance AIO 09-1.[9] I do not now make a determination regarding which procedure is proper. I do however, strongly encourage both parties to resolve this issue so that this dispute is not further delayed. The core of this dispute involves an alleged failure to train a small number of individuals. It is in each party's best interest to resolve this dispute quickly and without further delay or complication.

**CONCLUSION**

For the foregoing reasons, I grant summary judgment for Defendant on the issue of whether Defendant refused to arbitrate, and whether Plaintiff has exhausted its remedies in accordance with the collective bargaining agreement. Given the evidence presented, I find that no reasonable finder of fact would conclude that Defendant refused to arbitrate. I therefore dismiss this cause of action for Plaintiff's failure to exhaust the grievance and arbitration procedures set forth in the collective bargaining agreement. I decline to award costs or impose sanctions on either party.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: November 24, 2009

---

[9] As previously discussed, this grievance was filed to resolve the dispute between ABC and Plaintiff regarding the proper grievance procedure to be followed for the resolution of grievance AC09-02.